| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK**<br>------------------------------------------------------------x<br>In re: | <u>**FOR PUBLICATION**</u><br><br>Chapter 11 |
| Miami Metals I, Inc., *et al.*,[1] | Case No. 18-13359 (SHL) |
| Debtors.<br>------------------------------------------------------------x<br>Cooperatieve Rabobank U.A., New York<br>Branch, *et al.*, | (Jointly Administered) |
| Plaintiffs,<br>v. | Adv. No. 20-01061 (SHL) |
| Crowe LLP, | |
| Defendant.<br>------------------------------------------------------------x | |

# **MEMORANDUM OF DECISION**

**A P P E A R A N C E S:**

**SCOTT J. FEDER**
*Attorney for Plaintiffs*
4649 Ponce De Leon Boulevard
Coral Gables, Florida 33146
By:    Scott J. Feder, Esq.

**SOLOMON & CRAMER LLP**
*Attorney for Plaintiffs*
1441 Broadway, Suite 6026
New York, NY 10018
By:    Andrew T. Solomon, Esq.

**TABET DIVITO & ROTHSTEIN LLC**
*Attorneys for Defendant*
209 South LaSalle Street, 7th Floor
Chicago, Illinois 60604
By:    Amanda Catalano, Esq.

---

[1]    The Debtors in the Chapter 11 cases titled *In re Miami Metals I, Inc., et al.*, Case No. 18-13359, include: Miami Metals I, Inc. (f/k/a Republic Metals Refining Corporation); Miami Metals II, Inc. (f/k/a Republic Metals Corporation ("RMC")); Miami Metals III LLC (f/k/a Republic Carbon Company, LLC); Miami Metals IV LLC (f/k/a J & L Republic LLC); Miami Metals V LLC (f/k/a R & R Metals, LLC); Miami Metals VI (f/k/a RMC Diamonds, LLC); Miami Metals VII (f/k/a RMC2, LLC ("RMC2")); Miami Metals VIII (f/k/a Republic High Tech Metals, LLC); Republic Metals Trading (Shanghai) Co., Ltd.; and Republic Trans Mexico Metals, S.R.L. (collectively, the "Debtors").

John M. Fitzgerald, Esq.
Mark H. Horwitch, Esq.
Caesar A. Tabet, I, Esq.
Jordan Wilkow, Esq.

**THE KAGEN LAW FIRM**
*Attorneys for Defendant*
570 Lexington Avenue
New York, NY 10101
By:     Stuart Kagen, Esq.

**KAGEN & CASPERSEN**
*Attorneys for Defendant*
757 3rd Ave., 20th Fl.
New York, NY 10017
By:     Stuart Kagen, Esq.

**COFFEY BURLINGTON, P.L.**
*Attorneys for Defendant*
2604 South Bayshore Drive
Miami, Florida 33133
By:     Paul Joseph Schwiep, Esq.
        Fernando laTour Tomayo, Esq.
        John Everett Thornton, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion of the Plaintiffs Cooperatieve Rabobank U.A., New York Branch; Brown Brothers Harriman & Co.; Bank Hapoalim B.M.; Mitsubishi International Corporation; ICBC Standard Bank PLC; Techemet Metal Trading, LLC; Woodforest National Bank; and Hain Investors Master Fund, LTD (collectively, the "Plaintiffs" or "Lenders") for abstention under 28 U.S.C. Section 1334(c), and remand under to 28 U.S.C. Sections 1447(c) and 1452(b).  *See* Plaintiffs' Memorandum of Law in Support of Abstention and Remand ("Lenders' Memorandum") [ECF No. 1-4].  For the reasons discussed below, the Lenders' motion is granted.

## BACKGROUND

The Debtors Miami Metals I, Inc., *et al.* filed for Chapter 11 relief in early November 2018 [ECF No. 1, Case No. 18-13359], and their plan of liquidation was confirmed on December 23, 2019 [ECF No. 1668, Case No. 18-13359] (the "Plan"). The Plaintiffs in this case are banks that served as the pre-petition secured lenders of the Debtors, who were in the business of refining precious metals. On or about June 24, 2019, the Lenders commenced a state court action in Florida against Defendant Crowe LLP (the "Defendant") for allegedly conducting a "grossly negligent" audit of the Debtors' 2014 and 2015 financial statements, resulting in the Lenders issuing loans based on an inflated inventory. *See* Complaint, ECF No. 1 at 16 of 173 (complaint alleging negligence, gross negligence, and violations of Florida's Deceptive and Unfair Trade Practices Act). Lenders allege damages in excess of $57 million. *Id.* at 33–36 of 173.

Defendant removed the case to the United States District Court for the Southern District of Florida under 28 U.S.C. Sections 1334(b) and 1452(b). In early August 2019, Defendant filed a motion to transfer the case to the Southern District of New York, ECF No. 1-5, which the Lenders opposed, ECF No. 1-6. At the same time, the Lenders filed a motion for abstention and remand of the case back to the Florida state court. *See* Lenders' Memorandum [ECF No. 1-4]. In February 2020, the Florida District Court granted Defendant's motion to transfer the case to the Southern District of New York but did not rule on the Lenders' motion for abstention and remand. *See* ECF No. 1-11. The New York District Court subsequently referred the case to this Court. ECF No. 1-19. Thus, the Lenders' motion for abstention and remand, originally filed in the Southern District of Florida, ECF No. 1-4, is now before this Court. The parties filed supplemental pleadings on the motion after the case arrived in this Court. *See* Crowe LLP's

3

Supplemental Memorandum of Law in Opposition to Plaintiffs' Motion for Abstention and Remand [ECF No. 23-1] ("Defendant's Opposition"); Plaintiffs' Memorandum of Law in Further Support of Motion for Abstention and Remand [ECF No. 25] ("Lenders' Memorandum in Further Support"); Crowe LLP's Reply to Plaintiffs' Motion for Abstention and Remand [ECF No. 26-1] ("Defendant's Reply").

In their motion, the Lenders do not contest that removal was proper or that the Court has subject matter jurisdiction over their claims.[2] But they contend that the case should nonetheless be transferred back to the Florida state court based on mandatory abstention under 28 U.S.C. Section 1334(c)(2), or, in the alternative, permissive abstention and equitable remand under Sections 1334(c)(1) and 1452(b). *See* Lenders' Memorandum at 1–6; Lenders' Memorandum in Further Support at 7–8. The Defendant opposes. *See generally* Defendant's Response in Opposition to Plaintiff's Memorandum of Law in Support of Abstention and Remand [ECF No. 1-7]; Defendant's Opposition; Defendant's Reply.

## DISCUSSION

### I. Waiver of Right to Seek Mandatory Abstention

As a threshold matter, the Court must determine whether the Lenders have waived their right to seek mandatory abstention. Defendant contends that the Lenders have waived this right, arguing that the Chapter 11 confirmation order [ECF No. 1668, Case No. 18-13359] (the "Confirmation Order") and the terms of the Plan—terms which the Lenders unanimously approved and to which they are now bound—confer "exclusive jurisdiction" over the Lenders'

---

[2] The parties agree that the Court's subject matter jurisdiction is not in question here; however, the Court's analysis below is informed by the long-recognized rule that "once confirmation occurs, the bankruptcy court's jurisdiction shrinks." *Core Litigation Trust v. Apollo Global Management, LLC, et al. (In re AOG Entm't, Inc.)*, 569 B.R. 563, 574 (Bankr. S.D.N.Y. 2017) (citing *Penthouse Media Grp. v. Guccione (In re General Media, Inc.)*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005)).

4

claims here.  *See* Defendant's Opposition at 4–9.  The Lenders disagree, contending that the Plan does not specifically retain jurisdiction over the instant claims and, thus, they did not "knowingly and voluntarily waive[ ] their right to seek remand."  Lenders' Memorandum in Further Support at 4–5.

"There can be no doubt that [the right to seek mandatory abstention] can be waived by any party."  *In re AHT Corp.*, 265 B.R. 379, 387 n.2 (Bankr. S.D.N.Y. 2001); *see also Baker v. Simpson*, 613 F.3d 346, 350 (2d Cir. 2010) (citing *United States v. Brown,* 352 F.3d 654, 663 (2d Cir. 2003) and *Billing v. Ravin, Greenberg & Zackin, P.A.,* 22 F.3d 1242, 1245 n.1 (3d Cir. 1994)).  "[W]aiver is the 'intentional relinquishment or abandonment of a known right,'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)), and "must be made voluntarily, knowingly and intelligently,'" *Murray v. Town of N. Hempstead*, 853 F. Supp. 2d 247, 259 (E.D.N.Y. 2012) (citing *Doe v. Marsh,* 105 F.3d 106, 111 (2d Cir. 1997)).  "[I]n the civil no less than the criminal area, 'courts indulge every reasonable presumption against waiver.'"  *Id.* at 259–60 (quoting *Fuentes v. Shevin,* 407 U.S. 67, 95 n.31 (1972)).  Where waiver is not explicit, it may be implied through the conduct of a party; however, "[t]he conduct said to constitute a waiver must be clear and unequivocal, as waivers are never to be lightly inferred."  *Mooney v. City of New York*, 219 F.3d 123, 131 (2d Cir. 2000) (quoting *Tray–Wrap, Inc. v. Six L's Packing Co.*, 984 F.2d 65, 68 (2d Cir. 1993)).  The "[p]arty asserting waiver 'bears the weighty burden of establishing that a 'clear and unmistakable' waiver has occurred.'"  *Id.* (quoting *NLRB v. New York Tel. Co.,* 930 F.2d 1009, 1011 (2d Cir. 1991)).

Defendant argues that the language in the Confirmation Order and Plan serves as a waiver of the Lenders' right to seek abstention over all cases "related to" the bankruptcy case, including this adversary proceeding.  Defendant's Opposition at 5.  The Confirmation Order and

5

Plan state that this Court "shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and th[e] Plan," including matters set forth in Article 13 of the Plan, discussed *infra*. *See* ECF No. 1668, Case No. 18-13359 at 15–16, 35, and 74 of 124. As the instant adversary proceeding is related to the bankruptcy case, Defendant argues, the Lenders have waived their right to mandatory abstention. *Id.* at 5–7 (relying on *In re AHT Corp.*, 265 B.R. at 387 & n.2). In *In re AHT Corp.*, the Court found a waiver of the right to seek mandatory abstention based on a clause in the corporate parties' asset purchase agreement stating "that all actions and proceedings relating to the interpretation, enforcement or breach of this agreement shall be litigated in the United States Bankruptcy Court for the Southern District of New York, White Plains Division." 265 B.R. at 387 & n.2.

But the *In re AHT* case is not a good fit here. The choice-of-law clause in that asset purchase agreement specifically covered cases "relating to the interpretation, enforcement or breach of [that] agreement." *See In re AHT Corp.*, 265 B.R. at 387. By contrast, the Defendant here relies on a generic and broad boiler-plate clause in the Confirmation Order and Plan.[3] And this generic language must be read in context with the other provisions of the Plan. *See In re Conco, Inc.*, 855 F.3d 703, 711 (6th Cir. 2017) (quoting *In re Dow Corning, Corp.*, 456 F.3d 668, 676 (6th Cir. 2006) ("[i]n interpreting a confirmed plan, courts use contract principles, since the plan is effectively a new contract between the debtor and its creditors," and "[s]tate law governs those interpretations")); *In re Lehman Bros. Inc.*, 478 B.R. 570, 586 (S.D.N.Y. 2012), *aff'd sub nom. In re Lehman Bros. Holdings Inc.*, 761 F.3d 303 (2d Cir. 2014), and *aff'd sub nom.*

---

[3] In their original motion, the Lenders did assert that "it is arguable whether this [adversary proceeding] is *sufficiently* 'related to'" the bankruptcy case. Lenders' Memorandum at 2 (emphasis added). But they provided no other argument on this point. In any event, the Lenders later conceded that this case was related to the bankruptcy because it was removed prior to the confirmation of the Plan. *See* Lenders' Memorandum in Further Support at 4 n.5. The Lenders note, however, that despite their "concession on removal," they have not consented to adjudicate this case in federal court. *Id.*

6

*In re Lehman Bros. Holdings Inc.*, 590 F. App'x 92 (2d Cir. 2015) (under New York law, contract interpretation requires that agreements be "read as a whole"). The broad language here refers to Article 13, which lists 23 items over which the Court specifically retains jurisdiction. *See* ECF No. 1668, Case No. 18-13359 at 77–79 of 124. This list includes, *inter alia*:

- resolving disputes related to claims against the estate;

- hearing certain causes of action brought by the Debtors;

- resolving litigation related to defined title property claims;

- resolving matters relating to executory contacts to which the Debtors are a party or may be liable;

- resolving motions or adversary proceedings pending in the Chapter 11 cases on the Plan's effective date;

- resolving disputes arising in connection with the Plan or Confirmation Order; and

- determining any other matters that may arise in connection with or relating to the Plan or any agreement or the Confirmation Order.

*See id.* But this list does not include this action, even though this action is specifically identified and discussed elsewhere in the Plan. The Plan defines the instant action as the "Auditor/Lender Claim":

> Any rights, claims, or causes of action that Secured Parties have or may have against . . . Crowe LLP . . . that arise out of or relate in any way to the Secured Parties relationship or transactions with the Debtors, including, without limitation, the action captioned *Cooperatieve Rabobank U.A., New York Branch v. Crowe LLP*, Case No. 2019-018945-CA-01 pending in the 11th Judicial Circuit Court for Miami-Dade County, Florida.

The Plan at 49 of 124. The parties agree that this definition covers this action. *See* Lenders' Memorandum in Further Support at 5; Defendant's Opposition at 8. Given these facts, the absence of this case from the 23 items specifically listed in Article 13 strongly undercuts a claim of a knowing and voluntary waiver here. *See* Lenders' Memorandum in Further Support at 4–5.

7

Defendant counters that the Lenders are "essentially invoking the doctrine of *expressio unius est exclusio alterius*" (the mention of one thing implies the exclusion of the other) and notes that the list is immediately preceded by the phrase "including but not limited to." Defendant's Reply at 2. Thus, Defendant argues that the Court cannot conclude that the Auditor/Lender Claim is definitively excluded from this Court's jurisdiction. *Id.* But that is far from clear in the text of the Plan. Moreover, the notion that the Lenders knowingly and voluntarily waived their rights is at odds with the fact that the Lenders have consistently sought to enforce their rights to mandatory abstention and remand since their initial filing of this motion in Florida, even as the bankruptcy case moved forward towards confirmation of the Plan, which contained the language at issue. *See* Lenders' Memorandum at 6 (citing ECF Nos. 1-14, 1-18, and 17). Thus, the Court concludes that the Defendant has not met its burden of establishing the high bar of waiver. *See Mooney*, 219 F.3d at 131.[4]

## II. Mandatory Abstention

Turning to the merits of the Lenders' motion, they argue that abstention and remand to the Florida State Court is mandated by 28 U.S.C. Section 1334(c)(2). *See* Lenders' Memorandum at 3–4.

### A. The Legal Standard

28 U.S.C. Section 1334(c)(2) requires federal courts to abstain from hearing non-core bankruptcy matters concerning state law issues under certain circumstances. Specifically, Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title

---

[4] The Lenders also appear to argue that a decision by this Court waiving a right to mandatory abstention in the Plan would be a "legally impermissible" expansion of the constitutional limits on the Court's jurisdiction. *See* Lenders' Memorandum at 5–6. Because the Court finds that the Lenders did not waive their right to mandatory abstention, the Court need not address this argument.

8

> 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

Mandatory abstention requires six conditions to be satisfied: (1) the abstention motion is timely, (2) the action is based on a state law claim, (3) the action is "related to" a bankruptcy proceeding but does not "arise under" the Bankruptcy Code, (4) federal bankruptcy jurisdiction is the sole basis of federal jurisdiction for the action, (5) the action was commenced in state court, and (6) the action can be timely adjudicated in state court. *See In re Residential Capital, LLC*, 519 B.R. 890, 902 (Bankr. S.D.N.Y. 2014); *In re Bradlees, Inc.*, 311 B.R. 29, 34 (Bankr. S.D.N.Y. 2004). The party opposing abstention bears the burden of showing that mandatory abstention is not warranted. *See In re AOG Entm't, Inc.*, 569 B.R. at 573.

As the parties do not dispute that the first five conditions required for mandatory abstention are satisfied, *see* Lenders' Memorandum at 8–14; Defendant's Opposition at 9–21, the Court will focus on the last factor of timely adjudication. The Second Circuit evaluates four factors when considering timeliness:

> (1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate.

*Parmalat Capital Finance Ltd. v. Bank of America Corp.*, 639 F.3d 572, 580 (2d Cir. 2011).

In considering the first two factors, the Second Circuit has noted that timeliness "requires a comparison of the time in which the respective state and federal forums can reasonably be expected to adjudicate the matter." *Id.* Thus, a court should consider the relative backlogs of the

state and federal court calendars. *See id.* A state court, however, may still be a timely forum, even if it will require more time to adjudicate an action than a federal court, as long as the bankruptcy proceedings will not be hindered by the delay. *See Post Investors LLC v. Gribble*, 2012 WL 4466619, at *5 (S.D.N.Y. Sept. 27, 2012); *Allstate Ins. Co. v. Credit Suisse Securities (USA) LLC*, 2011 WL 4965150, at *7 (S.D.N.Y. Oct. 19, 2011). Where the legal issues in a case are complex, the forum with more expertise in that area of law may be expected to adjudicate the matter more quickly than the other forum. *See Parmalat*, 639 F.3d at 580. While federal courts naturally have greater expertise in applying federal law, "this advantage dissipates for cases alleging exclusively state claims." *Allstate Ins. Co. v. Ace Securities Corp.*, 2011 WL 3628852, at *10 (S.D.N.Y. Aug. 17, 2011).

With regard to the third factor, the court must consider whether the state law claims need to be quickly resolved because of an ongoing bankruptcy proceeding. *See Parmalat*, 639 F.3d at 581. In a Chapter 11 liquidation proceeding, like a Chapter 7 proceeding, timely adjudication can be weighed relatively lightly because there is no reorganization plan and less administrative urgency. *See Joremi Enters., Inc. v. Hershkowitz (In re New 118th LLC)*, 396 B.R. 885, 895 (Bankr. S.D.N.Y. 2008) ("in 'a chapter 11 case with a confirmed liquidating plan, where the primary concern is the orderly accumulation and distribution of assets, the requirement of timely adjudication is seldom significant'"); *see also Silverman v. The City of New York (In re Leco Enterprises, Inc.)*, 144 B.R. 244, 251 (S.D.N.Y. 1992). "If the lawsuit will not prolong the administration of the bankruptcy case, it supports the position that it can be timely adjudicated in state court." *In re AOG Entm't, Inc.*, 569 B.R. at 580.

Finally, in assessing the fourth factor, the court considers whether the state court proceeding would prolong the administration of the estate. *See Parmalat*, 639 F.3d at 581. In so

doing, the Second Circuit has considered: "(i) whether the district court is concurrently charged with administration of the bankruptcy estate; (ii) close connections between the defendants in the action and the debtor; and (iii) the complexity of the litigation." *BCG Partners, Inc. v. Avison Young (Canada), Inc.*, 919 F. Supp. 2d 310, 320 (S.D.N.Y. 2013).

### B. Application of the Timeliness Factors

The first factor—the backlog of the state court's calendar relative to the federal court's calendar—does not weigh either in favor of or against abstention and remand.

Defendant argues that this Court is the more efficient forum given the greater backlog in the Florida State Court. *See* Defendant's Opposition at 11–13. In support of this contention, Defendant cites the 2019 Clearance Report for Florida's Eleventh Judicial Circuit, which contains statistics for the five most recent years available. *Id.* at 11–12 (citing Exhibit 1 [ECF No. 23-1 at 11-1–11-7]). Defendant asserts that the report demonstrates that the state court has not been keeping up with its caseload as the clearance rates for professional malpractice cases have been well below 100% for the previous three years, and the rates for contract cases were below 100% for four of the previous five years, with the most recent year at just 79.1%. *Id.* at 12. Defendant compares this information with Federal Judicial Caseload Statistics that show clearance rates for bankruptcy cases and adversary proceedings in this District at over 100% for four of the last five years, as well as declines of 14% for pending bankruptcy matters and 40% for adversary proceedings. *Id.* at 12–13 (citing Exhibits 2 and 3 [ECF No. 23-1 at 42–50 of 53] (statistics for years ending March 31, 2015 to March 31, 2019)).

By contrast, the Lenders argue that Florida's backlog is smaller. *See* Lenders' Memorandum at 9. Citing the same source as Defendant, the Lenders note that Florida's clearance rate for the last quarter of 2019 was over 100% both overall and for civil cases, *id.*,

11

while the clearance rate for adversary proceedings in this District fell to 65% in the year ending on December 31, 2019, *id.* (citing http://www.uscourts.gov/file/27842/download (federal statistics for the years ending on December 31 of 2018 and 2019, as opposed to March 31, 2015 to 2019 as cited by Defendant)). Essentially, the two sides disagree as to whether the Court should consider the most recent statistics of 2019 or the statistical trends of the five years culminating in 2019. Defendant correctly points out that Florida's Clearance Rate Report advises that "[c]learance rates statistically tend to be more volatile when measured over shorter time periods[,] [t]hey should be compared over a period of five or more years to identify trends," and that the quarterly data cited by the Lenders for 2019 were not necessarily final as they "were extracted from a dynamic data base and may be amended by the Clerk of Court." ECF No. 23-1 at 11-1. As for the statistics in this District, Defendant contends that 2019 was a statistical anomaly and is outweighed by the clearance rates of the preceding four years combined with the reduction in this Court's docket over that same time period. *See* Defendant's Opposition at 13.

In response, the Lenders argue that, if remanded, this case would be tried in Florida's Complex Business Litigation Division, which has special rules designed to "avoid technical delay, encourage civility, permit just and prompt determination of all proceedings, and promote the efficient administration of justice." Lenders' Memorandum in Further Support at 10. The Lenders concede that this division does not publish separate backlog statistics but reasonably ask the Court "to infer that cases move faster in this specialized unit." *Id.*

The Court notes that the COVID-19 pandemic may very well render the statistics cited here to be woefully outdated. But based on what is currently before the Court, the evidence here on this factor does not favor either party. In any event, the backlog in the respective courts is not by itself determinative of the outcome here since the inquiry of whether a case can be timely

12

adjudicated in state court "cannot 'turn exclusively on whether an action could be adjudicated most quickly in state court.'" *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 671 F.3d 261, 267 (2d Cir. 2012) (quoting *Parmalat,* 639 F.3d at 580).

The second factor—the complexity of the issues presented and the respective expertise of each forum—weighs in favor of abstention and remand. Defendant argues that this Court has the most expertise in the relevant areas of law, as well as a greater familiarity with the record. *See* Defendant's Opposition at 14. Defendant relies on the fact that the Lenders' negligence claims are governed by New York law and that the facts of the instant case are the same as those in the underlying bankruptcy case. *See* Defendant's Opposition at 14. In discussing this second factor, the Second Circuit has noted that, "[w]here the legal issues in a case are especially complex, the forum with the most expertise in the relevant areas of law may well be expected to adjudicate the matter in a more timely fashion relative to the other forum." *Parmalat,* 639 F.3d at 580–81. Neither party appears to contend that the issues presented in this case are "especially complex." *See* Lenders' Memorandum in Further Support at 10; Defendant's Opposition at 14–15. Moreover, the Lenders assert that the Defendant ignores the threshold choice-of-law inquiry— governed by Florida law—and the Florida Court is best positioned to determine which state's law applies under its own choice of law rules. *See* Lenders' Memorandum in Further Support at 11. Indeed, this case came from Florida so "[a]t a minimum, the [Florida] court is the transferor court, and [Florida] law will determine whether [Florida] or New York law governs the tort claims." *See In re AOG Entm't, Inc.*, 569 B.R. at 582 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 638–39 (1964)). Moreover, Florida law will determine the disposition of the Lenders' cause of action under Florida's Deceptive and Unfair Trade Practices Act. Although the issues presented here do not appear to be especially complex, the Florida Court "may have greater

13

familiarity with the law governing" under the applicable Florida statute and "is undoubtedly more familiar than this Court with [its own choice-of-law] rules." *See id.* at 583. It is true that the Plan and Intercreditor Agreement that serve as the background for this lawsuit are governed by New York law.[5] But Defendant "ha[s] not identified any ambiguity or explained why th[ese] document[s] will have to be interpreted to resolve any . . . disputes" as to the accounting issues at the core of this case. *See id.*

Defendant argues that this Court has the benefit of a greater familiarity with the record of the bankruptcy case, where the Plaintiffs were the secured lenders of the Debtors and actively participated in the case. *See* Defendant's Opposition at 15. Defendant notes that the alleged overvaluation of the Debtors' inventory was purportedly the cause of both the bankruptcy and the injuries here. *Id.* at 15–16. Defendant also cites to the Intercreditor Agreement. *Id.* But Defendant fails to explain how the Court's knowledge of the bankruptcy would inform this case. Defendant does not point to—nor is the Court aware of—any litigation in the bankruptcy relating to the overvaluation of the inventory—or any other issue—that would meaningfully assist the Court in overseeing this dispute. Ultimately, the Court agrees with the Lenders' contention that the Court's familiarity with the record extends only to debtor-creditor issues and not to the Lenders' claims against Defendant here. *See* Lenders' Memorandum in Further Support at 12 (citing *New York Commercial Bank v. Pullo*, 2013 WL 494050, at *5 (Bankr. S.D.N.Y. Feb. 7,

---

[5]    The Lenders' negligence claims here stem from the "Intercreditor Agreement." Under this agreement, the Lenders agreed to a common framework for providing ongoing loans to the Debtors. *See* ECF No. 1 at 27 of 173. The complaint alleges that Defendant owed a duty of care to the Lenders because Defendant knew that the Debtors would be providing statements audited by Defendant to the Lenders who would in turn provide credit or similar lending arrangements to the Debtors under the Intercreditor Agreement. *See* ECF No. 1 at 30–32 of 173; Defendant's Opposition at 7–8. Defendant allegedly breached this duty by, among other things, negligently inflating the Debtor's inventory upon which the loans were based. *Id.* The complaint further alleges that this overvaluation of the Debtor's inventory led to a default under the agreement with the creditors and, ultimately, to the Debtors' bankruptcy. ECF No. 1 at 32–33 of 173; Defendant's Opposition at 8. The Lenders also produced the Intercreditor Agreement in the bankruptcy case. *See* Defendant's Opposition at 7–8; ECF No. 761, Case No. 18-13359 at 2–3.

14

2013) (Defendants "have not argued that the [ ] Bankruptcy Court has presided over any issue connected with the Guarantee Agreements, will preside over any such issue, or has any familiarity with those agreements, which are at the heart of the State Court Action.")).

Moreover, the Lenders have already requested a jury trial, *see* Complaint [ECF No. 1 at 36 of 173], and have "not consent[ed] to entry of final orders or judgment by any bankruptcy judge," *see* Lenders' Memorandum in Further Support at 13 (quoting ECF No. 1-8 (Lenders' reply memorandum in support of its motion for abstention and remand filed in the Florida District Court)). Thus, retaining the case would require a bifurcated proceeding, unlike proceeding in state court.

Defendant lastly relies on the possibility of future litigation tied to the bankruptcy case. More specifically, Defendant anticipates filing a contribution claim against the Debtors if this adversary proceeding survives a motion to dismiss; Defendant argues that litigating this anticipated claim here and the instant matter in Florida would be inefficient and duplicative. *See* Defendant's Opposition at 19. But such litigation is uncertain. No such contribution claim has been filed, and it appears contingent on other events. Such a speculative claim against the Debtors does not counsel against abstention. *Cf. CAMOFI Master LDC v. U.S. Coal Corp.*, 527 B.R. 138, 144 (Bankr. S.D.N.Y. 2015) (denying permissive abstention because, among other things, a jury trial had not yet been demanded and "the likelihood and effect of a jury demand [wa]s speculative at th[at] point in the case").[6]

---

[6] The Lenders argue that any possible future contribution claim by Defendant would be barred by the Plan's Injunction and Bar Order and, in any event, would be untimely as it was not filed prior to the bar date. *See* Lenders' Memorandum in Further Support at 13 & n.13. Of course, Defendant disagrees, arguing that such a claim would not be barred or untimely. *See* Defendant's Reply at 5 (citing *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 340–41 (2d Cir. 2018)). In any event, the *SPV Osus* case relied upon by Defendant appears to be distinguishable. The issue there was whether the bankruptcy court had "related to" jurisdiction due to the defendants' "putative contribution claim" against the debtor, which the Second Circuit found it did and thus declined to remand the case to state court. *SPV Osus*, 882 F.3d at 339–41. The Court in *SPV Osus* was not presented with the question of whether mandatory or

15

The third factor—the status of the title 11 bankruptcy proceeding to which the state law claims are related—clearly weighs in favor of abstention. This bankruptcy case is now a liquidation proceeding and thus "there is no administrative urgency or plan of reorganization to facilitate." *In re New 118th LLC*, 396 B.R. at 894. Indeed, "[i]n deciding whether a matter may be timely adjudicated, perhaps the single most important factor is the nature of the underlying chapter [11] proceeding," and where the related bankruptcy involves a liquidation plan, "timely adjudication can be weighed relatively lightly." *Id*. (quoting *World Solar Corp. v. Steinbaum (In re World Solar Corp.*), 81 B.R. 603, 612 (Bankr. S.D.Cal. 1988)). This is true even though the state law claim and any related contribution claim will be part of any liquidation. *See id.* at 895 ("in 'a chapter 11 case with a confirmed liquidating plan, where the primary concern is the orderly accumulation and distribution of assets, the requirement of timely adjudication is seldom significant'"). And while Defendant argues that the state court has yet to take action in this case, this Court would also be starting from scratch on the merits.

The fourth factor—whether the state court proceeding would prolong the administration or liquidation of the estate—similarly weighs in favor of abstention. Defendant argues that abstention would significantly prolong the liquidation of the estate given the Plan's distribution of damages to creditors, Defendant's anticipated contribution claims against the Debtor here, and the growing backlog of cases in the Eleventh Judicial Circuit in Florida. *See* Defendant's Opposition at 21–22. But once again, the Lenders correctly note that this factor is not significant to a post-confirmation Chapter 11 liquidation plan. *See* Lenders' Memorandum in Further Support at 14 (citing *Parmalat*, 671 F.3d at 268–69). Moreover, if the Lenders prevail in state court, "the litigation proceeds will be distributed in accordance with the Plan without any further

---

permissive abstention applied. Here, as discussed *supra*, the parties do not dispute that this action is "related to" the bankruptcy proceeding.

16

involvement by the Court," and "the bankruptcy case[ ] [can] be fully administered despite the pendency of this action in the [Florida] State Court." *See In re AOG Entm't, Inc.*, 569 B.R. at 585.

Given this assessment of the timeliness factors and the lack of dispute as to the other five conditions for mandatory abstention, the Court finds that abstention is mandated by 28 U.S.C. Section 1334(c)(2). Given that abstention is mandatory, the Court does not need to address the doctrines of permissive abstention or equitable remand here.[7]

## CONCLUSION

For the foregoing reasons, the Court concludes that abstention is mandatory under 28 U.S.C. Section 1334(c)(2), and the Lenders' motion is granted. The Lenders are directed to settle an order on five days' notice. The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice. A copy of the notice and proposed order shall also be served upon counsel to the Defendant.

Dated: March 24, 2021
       New York, New York

                                    */s/ Sean H. Lane*
                                    UNITED STATES BANKRUPTCY JUDGE

---

[7] Given the overlap of the factors in the tests for mandatory abstention, permissive abstention, and equitable remand—and based the Court's analysis above—the facts here also likely support relief to the Lenders under these alternative theories. *See In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 332 (S.D.N.Y. 2003) (listing the factors considered in determining whether to abstain from hearing a state court proceeding under Section 1334(c)(1)); *Rahl v. Bande*, 316 B.R. 127, 135 (S.D.N.Y. 2004) (noting that the factors considered in deciding whether to equitably remand pursuant to Section 1452(b) are substantially similar to those considered when deciding whether to abstain pursuant to Section 1334(c)(1)).